Robert SCHMIDT, Kim Holdsworth, Robert Schmidt Development Corporation, Dori P. Derr, Plaintiffs,

v.

GOVERNMENT OF THE VIRGIN ISLANDS, and Roy Martin, in his official capacity as Tax Assessor, Defendants.

No. CIV.2001–181.

District Court, Virgin Islands, D. St. Thomas and St. John.

Aug. 21, 2003.

James M. Derr, David E. Nichols, St. Thomas, VI, for the plaintiff.

Wayne G. Anderson, St. Thomas, VI, for the defendants.

## MEMORANDUM

MOORE, District Judge.

On May 12, 2003, I found the Territory's property tax system unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the actual value of properties as required by 48 U.S.C. § 1401a." *Berne Corp. v. Government of the Virgin Islands*, 262 F.Supp.2d 540, 561 (D.Vi.2003) [*Berne*

*Corp. II* ]. Accordingly, I entered a decree in the consolidated portion of this case awarding injunctive and other such relief common to all parties. All that remains for resolution in this case is application of this decree to the unique facts posed in this individual action brought by plaintiffs Robert Schmidt, Kim Holdsworth, Robert Schmidt Development Corporation, and Dori P. Derr [collectively "plaintiffs"], including their request for declaratory relief regarding the actual value of the parcels of real property they own.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Robert Schmidt ["Schmidt"] is a resident of and building contractor in the Virgin Islands. and has extensive experience in the construction of residential property. From 1994 to 1999, he owned vacant land on St. Thomas known as D–18 Estate Lovenlund, Parcel Number 1–03002–0330–00. Schmidt also owned residential property on St. Thomas known as 10–2–6 Peterborg, Parcel Number 1–01301–0125–00 from 1994 to 2000.

Plaintiff Kim Holdsworth ["Holdsworth"] is a resident of the Virgin Islands. Holdsworth currently owns vacant land on St. Thomas known as 8–30 Dove Way, Estate Peterborg, Parcel Number 1–01304–0104–00. She also owns residential property on St. Thomas known as 8–31 Dove Way, Estate Peterborg, Parcel Number 1–01304–0213–00.

Plaintiff Robert Schmidt Development Corporation ["RSDC"] is a Virgin Islands corporation with its principal place of business on St. Thomas. Over the past ten years, RSDC has owned various pieces of vacant land on St. Thomas, including 11–1–6 Estate Peterborg (Parcel Number 1–01304–0213–00), 12–19 Estate Peterborg (Parcel Number 1–01304–0250–00), 110

Estate Lovenlund (Parcel Number 1–03001–341–00), 119 Estate Lovenlund (Parcel Number 1–03001–342–00), 120 Estate Lovenlund (Parcel Number 1–3001–339–00), and 100 Estate Lovenlund (Parcel Number 1–3001–340–00).

Plaintiff Dori P. Derr ("Derr") is a resident of the Virgin Islands. She currently owns residential property on St. Thomas known as 8–28 Estate Peterborg, Parcel Number 1–01304–0102–00.

█ Upon their belief that the Government was vastly overstating the values of their respective properties for property tax purposes, the plaintiffs each filed timely appeals of their assessments with the Board of Tax Review. (Pls.' Exs. 14, 16, 21, 26, 34, 39, 43, 47, 50, 52.) Despite the fact that some of these appeals have been pending since 1994, the Board of Tax Review failed to conduct hearings or provide any relief to plaintiffs. Accordingly, plaintiffs sued the defendants in this Court alleging that the Government had illegally assessed the value of their respective properties based on replacement value, rather than the actual value required by federal law.

At the trial of this individual case, plaintiffs presented much evidence in support of their valuations of their respective properties, including purchase and sales records for specific properties (Pls.' Exs. 2, 23, 32, 37, 38, 42, 46, and 49), evidence of comparable sales (id. at 12, 17, 22, 27), single property appraisals (*id.* at 6–8), and the lay opinions of the owners regarding the values of their properties. For example, Schmidt testified with respect to 8–31 Estate Peterborg that the Government had used a rate from $149.97 per square foot to $199.61 per square foot for construction of the building during the years 1996 through 2000, specifically excluding the cistern, stairways, swimming pool, and fence. (Schmidt Test., Jan. 28, 2003, at

62–63.) Schmidt testified that, in his professional opinion, the costs for construction of the entire building, *including* cistern, stairways, swimming pool, and fence, ranged between $108 to $150 per square foot. (*Id.* at 56–57.)

Plaintiffs noted the apparent failure of the Tax Assessor's office to physically inspect their properties as required by Virgin Islands law. For instance, Roy Martin, the Tax Assessor, testified that his office had inspected 8–28 Estate Peterborg on December 12, 1998. (Martin Test., Jan. 28, 2003 at 120.) Yet the testimony of Warren Knight, an appraiser for the Tax Assessor's office, indicated that a visit to Derr's residence on January 16, 2003 revealed that the Government's drawing of the property failed to acknowledge a significant kitchen addition that was constructed in 1996. (Knight Test., Jan. 28, 2003, at 99–100 ("As soon as we arrived, I looked at the old drawing and then realized that the house had changed. As soon as you go down the driveway, you can't miss it."); Pls.' Ex. 9; *see also* Derr Test., Jan. 28, 2003, at 11 (noting that the kitchen was renovated in 1996).) As Virgin Islands law required the Tax Assessor's office to inspect residential property every two years, until a 2001 amendment changed it to every five years, and as Knight testified that the renovation was readily evident to the naked eye, I could reasonably conclude that the Tax Assessor's office never actually inspected the property between 1996 and 2003, but rather arbitrarily assigned values. Such conclusion is supported from plaintiff's Exhibits 1 and 9, which evidence the Government's arbitrary use of a 1986 construction date, even though the property was actually built in 1975, and the unsupported increases of a garage from 400 square foot to 800 square

feet and a porch from 580 square foot to 1100 square feet.[1]

At trial and again in its proposed findings of fact and conclusions of law, the Government failed to produce any evidence to support the values assessed by the Tax Assessor's Office and, instead, sought to rely on the same stale arguments it has repeatedly made throughout this property tax litigation.[2] With no evidence to justify the Tax Assessor's assessments, I find plaintiffs' testimony to be credible and the Government's testimony self-serving and incredible. Accordingly, I incorporate my earlier findings from the consolidated portion of this case by reference, find that "the system of assessment as presently established and operated by the Tax Assessor is structurally incapable of equitably and reliably implementing the federal statutory mandate of taxing all real property on its actual value," *see Berne II*, 262 F.Supp.2d at 555, and, in actual application to the plaintiffs' properties, has failed to produce reliable or equitable assessments of their actual or fair market values. Thus, all that remains is to determine a suitable remedy for plaintiffs' respective properties.

## II. REMEDIES

### A. Property of Dori P. Derr

1. *8–28 Estate Peterborg*

■■■ The following chart demonstrates the assessed values and tax liability for 8–28 Estate Peterborg as well as Derr's own appraised values and proposed tax liability for her 1992–2001 tax bills.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1992 | $468,468 | $395,000 | $3,613.51 | $2,962.50 | $    651.01 |
| 1993 | $468,468 | $418,000 | $3,613.51 | $3,135.00 | $    478.51 |
| 1994 | $586,815 | $425,000 | $4,401.11 | $3,187.50 | $ 1,213.61 |
| 1995 | $586,915 | $325,000 | $4,094.33 | $2,437.50 | $ 1,656.83 |
| 1996 | $576,460 | $325,000 | $4,323.45 | $2,437.50 | $ 1,885.95 |
| 1997 | $642,103 | $390,000 | $4,815.78 | $2,925.00 | $ 1,890.78 |
| 1998 | $783,553 | $440,000 | $5,876.65 | $3,300.00 | $ 2,576.65 |
|  |  |  |  | Total | $10,353.24 |
| 1999 | $836,809 | $440,000 | $6,276.07 | $3,300.00 | $ 2,976.07 |
| 2000 | $831,297 | $484,000 | $6,234.73 | $3,630.00 | $ 2,604.73 |
| 2001 | $825,786 | $532,400 | $6,502.11 | $3,993.00 | $ 2,509.11 |
|  |  |  |  | Total | $ 8,089.91 |

---

1. Plaintiffs also pointed out the Tax Assessor's improper updating of the "effective year" of construction and using an excessively long depreciation life span of 110 years, calculated to manipulate the assessed values upward. (Derr Test., Jan. 28, 2003, at 19–20, 23); *see also Berne II,* 262 F.Supp.2d at 564 (finding that these methods artificially increases the value of a property).

2. The Government actually did raise one new argument, namely that its January 16, 2003 inspections of 8–28 Estate Peterborg and 8–31 Dove Way Estate Peterborg revealed improvements to those properties that would increase their respective values. I will address the validity of that argument in Part II of this memorandum. Notwithstanding this one argument, however, the majority of the Government's pleadings is just a rehashing of previously rejected arguments. *See Equivest St. Thomas, Inc. v. Government of the Virgin Islands,* 276 F.Supp.2d 439, 440–41, 2003 WL 21956171, slip op. at 2–4 (D.V.I.2003).

Having reviewed the testimony and evidence presented by plaintiff Derr, and noting the inability of the Government to produce any evidence to support its values, I find Derr's values to be credible and the Government's values to be overinflated and not credible.

The only real issue to resolve is the potential effect of the 1996 kitchen renovation on the value of Derr's property. Derr's husband testified that soon after the renovations were completed, an appraisal was performed that valued the property at $390,000. (James Derr Test., Jan. 28, 2003, at 15–16.) The Government's failure to even note the existence of these self-evident improvements leads me to conclude that the Tax Assessor's office never actually inspected the property between 1996 and January 16, 2003 as required by law, but instead arbitrarily assigned values to the property. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Derr for the 1992–1998 tax bills are the actual values for those tax years. Moreover, I find that Derr has overpaid her property taxes for those years and is entitled to a refund of

$10,353.24 plus interest at the statutory rate of 12 percent.[3]

Finally, for the 1999 tax bill and beyond, I will accept Derr's proffered values as good faith estimates of her tax obligations and order the Government to treat these values as the assessed values of 8–28 Estate Peterborg until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Derr has already paid her 1999–2001 tax bills at the Government's assigned values, she is entitled to a credit of $8,089.91 plus interest at the statutory rate of 12 percent.[4] The Government may not apply this credit to any future property tax obligation without Derr's consent. The Government may, however, chose to refund this credit and interest to Derr.

## B. Properties of Robert Schmidt Development Corporation

### 1. 100 Estate Lovenlund

The following chart demonstrates the assessed values and tax liability for 100 Estate Lovenlund as well as RSDC's own appraised values and proposed tax liability for its 1996–2001 tax bills.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1996 | $ 62,032.66 | $40,000 | $465.24 | $300.00 | $165.24 |
| 1997 | $ 68,233.33 | $40,000 | $511.75 | $300.00 | $211.75 |
| 1998 | $ 68,233.33 | $40,000 | $511.75 | $300.00 | $211.75 |
| | | | | Total | $588.74 |
| 1999 | $121,933.33 | $40,000 | $548.97 | $300.00 | $248.97 |
| 2000 | $121,933.33 | $40,000 | $548.97 | $300.00 | $248.97 |
| 2001 | $ 73,196.00 | $40,000 | $ 0.00 | $300.00 | $ 0.00 [5] |

3. Interest on such refunds shall begin to accrue on the date of the overpayment. *See* 33 V.I.C. § 1251(b)(2).

4. Interest on such credits shall begin to accrue on the date of the overpayment. *See* 33 V.I.C. § 1251(b)(1).

5. As the Government is currently enjoined from collecting property taxes from plaintiffs,

|   |   | Total | $497.94 |
|---|---|-------|---------|

Having reviewed the testimony and evidence presented by plaintiff RSDC, and noting the inability of the Government to produce any evidence to support its values, I find RSDC's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by RSDC for its 1996–1998 tax bills are the actual values for those tax years. Moreover, I find that RSDC has overpaid its property taxes for those years and is entitled to a refund of $588.74 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill and beyond, I will accept RSDC's proffered values as good faith estimates of its tax obligations and order the Government to treat these values as the assessed values of 100 Estate Lovenlund until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As RSDC has already paid its 1999 and 2000 tax bills at the Government's assigned values, it is entitled to a credit of $497.94 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without RSDC's consent. The Government may, however, chose to refund this credit and interest to RSDC.

### 2. 110 Estate Lovenlund

The following chart demonstrates the assessed values and tax liability for 110 Estate Lovenlund as well as RSDC's own appraised values and proposed tax liability for its 1994–2000 tax bills.[6]

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|----------|----------------|--------------|----------|---------------------|----------|
| 1994 | $55,235.00 | $40,000 | $414.94 | $300.00 | $114.94 |
| 1995 | $55,235.00 | $40,000 | $414.94 | $300.00 | $114.94 |
| 1996 | $55,235.00 | $40,000 | $414.94 | $300.00 | $114.94 |
| 1997 | $63,623.33 | $40,000 | $477.18 | $300.00 | $177.18 |
| 1998 | $60,856.66 | $45,000 | $456.43 | $337.50 | $118.93 |
|  |  |  |  | Total | $640.93 |
| 1999 | $65,283.00 | $45,000 | $489.62 | $337.50 | $152.12 |
| 2000 | $65,283.00 | $55,000 | $489.62 | $412.50 | $ 77.12 |
|  |  |  |  | Total | $229.24 |

Having reviewed the testimony and evidence presented by plaintiff RSDC, and noting the inability of the Government to produce any evidence to support its values, I find RSDC's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values

---

plaintiffs' failure to pay any property taxes from 1999 until a reasonable time after the Special Master certifies that the Territory's property tax system will produce credible and reliable actual values shall not be considered an underpayment.

6. RSDC sold 110 Estate Lovenlund for $55,000.00 on April 28, 2000. (Plt.'s Ex. 24.)

provided by RSDC for its 1994–1998 tax bills are the actual values for those tax years. Moreover, I find that RSDC has overpaid its property taxes for those years and is entitled to a refund of $640.93 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill and beyond, I will accept RSDC's proffered values as good faith estimates of its tax obligations and order the Government to treat these values as the assessed values of 110 Estate Lovenlund until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As RSDC has already paid its 1999 and 2000 tax bill at the Government's assigned values, it is entitled to a credit of $229.24 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without RSDC's consent. The Government may, however, chose to refund this credit and interest to RSDC.

### 3. *119 Estate Lovenlund*

The following chart demonstrates the assessed values and tax liability for 119 Estate Lovenlund as well as RSDC's own appraised values and proposed tax liability for its 1995–2000 tax bills.[7]

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1995 | $50,295.00 | $30,000 | $377.21 | $225.00 | $152.21 |
| 1996 | $55,325.00 | $40,000 | $414.94 | $300.00 | $114.94 |
| 1997 | $60,856.66 | $40,000 | $456.43 | $300.00 | $156.43 |
| 1998 | $60,856.66 | $40,000 | $456.43 | $300.00 | $156.43 |
| | | | | Total | $580.01 |
| 1999 | $65,283.00 | $40,000 | $489.62 | $300.00 | $189.62 |
| 2000 | $65,283.00 | $40,000 | $489.62 | $300.00 | $189.62 |
| | | | | Total | $379.24 |

Having reviewed the testimony and evidence presented by plaintiff RSDC, and noting the inability of the Government to produce any evidence to support its values, I find RSDC's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by RSDC for its 1995–1998 tax bills are the actual values for those tax years. Moreover, I find that RSDC has overpaid its property taxes for those years and is entitled to a refund of $580.01 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill and beyond, I will accept RSDC's proffered values as good faith estimates of its tax obligations and order the Government to treat these values as the assessed values of 119 Estate Lovenlund until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As RSDC has already paid its 1999 and 2000 tax bills at the Government's assigned values, it is entitled to a credit of $379.24 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without RSDC's consent. The Government may,

---

**7.** RSDC sold 119 Estate Lovenlund some time in 2000.

however, chose to refund this credit and interest to RSDC.

### 4. *120 Estate Lovenlund*

The following chart demonstrates the assessed values and tax liability for 120 Estate Lovenlund as well as RSDC's own appraised values and proposed tax liability for its 1995–1999 tax bills.[8]

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1995 | $56,390.00 | $00,000 | $422.93 | $225.00 | $197.93 |
| 1996 | $62,031.66 | $40,000 | $462.24 | $300.00 | $162.24 |
| 1997 | $68,223.33 | $40,000 | $511.75 | $300.00 | $211.75 |
| 1998 | $68,223.33 | $45,000 | $511.75 | $337.50 | $174.25 |
| | | | | Total | $746.17 |
| 1999 | $73,196.00 | $55,000 | $548.97 | $375.00 | $173.97 |
| | | | | Total | $173.97 |

Having reviewed the testimony and evidence presented by plaintiff RSDC, and noting the inability of the Government to produce any evidence to support its values, I find RSDC's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by RSDC for its 1995–1998 tax bills are the actual values for those tax years. Moreover, I find that RSDC has overpaid its property taxes for those years and is entitled to a refund of $746.17 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill, I will accept RSDC's proffered value as a good faith estimate of its tax obligation and order the Government to treat this value as the assessed value of 120 Estate Lovenlund until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As RSDC has already paid its 1999 tax bill at the Government's assigned values, it is entitled to a credit of $173.97 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without RSDC's consent. The Government may, however, chose to refund this credit and interest to RSDC.

### 5. *11–1–6 Estate Peterborg*

The following chart demonstrates the assessed values and tax liability for 11–1–6 Estate Peterborg well as RSDC's own appraised values and proposed tax liability for its 1994–2000 tax bills.

| Tax Year | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $55,881.66 | $35,000 | $419.11 | $262.50 | $156.61 |
| 1995 | $50,801.66 | $35,000 | $381.01 | $262.50 | $118.51 |
| 1996 | $50,801.66 | $35,000 | $381.01 | $262.50 | $118.51 |

---

8. 120 Estate Lovenlund was professionally appraised for $50,000.00 on May 3, 2000 and apparently later sold at that value. (Plt.'s Ex. 24.)

| 1997 | $61,471.66 | $37,500 | $461.04 | $281.25 | $179.79 |
|------|-----------|---------|---------|---------|---------|
| 1998 | $61,471.66 | $40,000 | $461.04 | $300.00 | $161.04 |
|      |           |         |         | Total | $734.46 |
| 1999 | $65,943.00 | $42,500 | $494.57 | $318.75 | $175.82 |
| 2000 | $65,943.00 | $45,500 | $494.57 | $341.25 | $153.32 |
|      |           |         |         | Total | $329.14 |

Having reviewed the testimony and evidence presented by plaintiff RSDC, and noting the inability of the Government to produce any evidence to support its values, I find RSDC's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by RSDC for its 1994–1998 tax bills are the actual values for those tax years. Moreover, I find that RSDC has overpaid its property taxes for those years and is entitled to a refund of $734.46 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill and beyond, I will accept RSDC's proffered values as good faith estimates of its tax obligations and order the Government to treat these values as the assessed values of 11–1–6 Estate Peterborg until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As RSDC has already paid its 1999 and 2000 tax bills at the Government's assigned values, it is entitled to a credit of $329.14 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without RSDC's consent. The Government may, however, chose to refund this credit and interest to RSDC.

### 6. *12–19 Estate Peterborg*

The following chart demonstrates the assessed values and tax liability for 12–19 Estate Peterborgas well as RSDC's own appraised values and proposed tax liability for its 1996–2001 tax bills.

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|------|-----------|---------|---------|---------|---------|
| 1996 | $ 91,788.33 | $50,000 | $688.41 | $375.00 | $ 313.41 |
| 1997 | $100,968.33 | $50,000 | $757.26 | $375.00 | $ 382.26 |
| 1998 | $100,968.33 | $50,000 | $757.26 | $375.00 | $ 382.26 |
|      |            |         |         | Total | $1,077.93 |
| 1999 | $108,311.00 | $50,000 | $812.33 | $375.00 | $ 437.33 |
| 2000 | $108,311.00 | $50,000 | $812.33 | $375.00 | $ 437.33 |
| 2001 | $108,311.00 | $50,000 | $ 0.00 | $375.00 | $ 0.00 |
|      |            |         |         | Total | $ 874.66 |

Having reviewed the testimony and evidence presented by plaintiff RSDC, and noting the inability of the Government to produce any evidence to support its values, I find RSDC's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by RSDC for its 1996–1998 tax bills are the actual values for those tax years. Moreover, I find that RSDC has

overpaid its property taxes for those years and is entitled to a refund of $1,077.93 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill and beyond, I will accept RSDC's proffered values as good faith estimates of its tax obligations and order the Government to treat these values as the assessed values of 12–19 Estate Peterborg until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As RSDC has already paid its 1999 and 2000 tax bills at the Government's assigned values, it is entitled to a credit of $874.66 plus interest

at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without RSDC's consent. The Government may, however, chose to refund this credit and interest to RSDC.

## C. Properties of Robert Schmidt

### 1. *D–18 Estate Lovenlund*

The following chart demonstrates the assessed values and tax liability for D–18 Estate Lovenlund as well as Schmidt's own appraised values and proposed tax liability for his 1995–1999 tax bills.[9]

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1995 | $ 87,158.33 | $50,000 | $719.06 | $375.00 | $ 344.06 |
| 1996 | $ 95,875.00 | $50,000 | $719.06 | $375.00 | $ 344.06 |
| 1997 | $105,463.33 | $55,000 | $790.78 | $412.50 | $ 378.28 |
| 1998 | $105,463.33 | $60,000 | $790.78 | $450.00 | $ 340.78 |
| | | | | Total | $1,407.18 |
| 1999 | $113,133.00 | $65,000 | $848.50 | $487.50 | $ 361.00 |
| | | | | Total | $ 361.00 |

Having reviewed the testimony and evidence presented by plaintiff Schmidt, and noting the inability of the Government to produce any evidence to support its values, I find Schmidt's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Schmidt for his 1995–1998 tax bills are the actual values for those tax years. Moreover, I find that Schmidt has overpaid its property taxes for those years and is entitled to a refund of $1,407.18 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill, I will accept Schmidt's proffered value as a good faith estimate of his tax obligation and order the Government to treat this value as the assessed value of D–18 Estate Lovenlund until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Schimdt has already paid his 1999 tax bill at the Government's assigned values, it is entitled to a credit of $361.00 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without Schmidt's consent. The Government may, however, chose to refund this credit and interest to him.

---

**9.** Schmidt sold D–18 Estate Lovenlund for $65,000.00 on September 9, 1999. (Plt.'s Ex. 38.)

## 2. *10–2–6 Estate Peterborg*

The following chart demonstrates the assessed values and tax liability for 10–2–6 Estate Peterborg as well as Schmidt's own appraised values and proposed tax liability for his 1994–2000 tax bills.[10]

| Tax Bill | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $479,463.00 | $342,000 | $3,595.98 | $2,565.00 | $1,030.98 |
| 1995 | $479,463.00 | $342,000 | $3,595.98 | $2,565.00 | $1,030.98 |
| 1996 | $477,860.00 | $350,000 | $3,583.95 | $2,625.00 | $ 958.95 |
| 1997 | $528,596.66 | $350,000 | $3,964.48 | $2,625.00 | $1,339.48 |
| 1998 | $528,596.66 | $350,000 | $3,964.48 | $2,625.00 | $1,339.48 |
| | | | | Total | $5,699.87 |
| 1999 | $577.440.00 | $350,000 | $4,330.80 | $2,625.00 | $1,705.80 |
| 2000 | $465.526.00 | $375,000 | $3,491.45 | $2,812.50 | $ 678.95 |
| | | | | Total | $2,384.75 |

Having reviewed the testimony and evidence presented by plaintiff Schmidt, and noting the inability of the Government to produce any evidence to support its values, I find Schmidt's values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Schmidt for his 1994–12998 tax bills are the actual values for those tax years. Moreover, I find that Schmidt has overpaid its property taxes for those years and is entitled to a refund of $5,699.87 plus interest at the statutory rate of 12 percent.

Finally, for the 1999 tax bill and beyond, I will accept Schmidt's proffered values as good faith estimates of his tax obligations and order the Government to treat these values as the assessed values of 10–2–6 Estate Peterborg until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Schmidt has already paid his 1999 and 2000 tax bill at the Government's assigned values, he is entitled to a credit of $2,384.75 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without Schmidt's consent. The Government may, however, chose to refund this credit and interest to him.

## D. Properties of Kim Holdsworth

### 1. *8–30 Estate Peterborg*

The following chart demonstrates the assessed values and tax liability for 8–30 Estate Peterborg as well as Holdsworth's own appraised values and proposed tax liability for tax bills 1994 through 2001.

| Tax Year | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|---|---|---|---|---|---|
| 1994 | $124,185.00 | $80,000 | $ 931.39 | $600.00 | $ 331.39 |

**10.** Schmidt sold 10–2–6 Estate Peterborg for $375,000.00 on April 19, 2000. (Plt.'s Ex. 23.)

| 1995 | $112,895.00 | $80,000 | $ 846.71 | $600.00 | $ 344.06 |
|------|-------------|---------|----------|---------|----------|
| 1996 | $124,186.66 | $80,000 | $ 931.48 | $600.00 | $ 344.06 |
| 1997 | $136,603.33 | $80,000 | $1,024.53 | $600.00 | $ 378.28 |
| 1998 | $136,603.33 | $80,000 | $1,024.53 | $600.00 | $ 340.78 |
|      |             |         |          | Total   | $1,758.64 |
| 1999 | $146,539.00 | $80,000 | $ 931.39 | $600.00 | $ 331.39 |
| 2000 | $146,539.00 | $80,000 | $ 0.00 | $600.00 | $ 0.00 |
| 2001 | $146,539.00 | $80,000 | $ 0.00 | $600.00 | $ 0.00 |
|      |             |         |          | Total   | $ 331.39 |

Having reviewed the testimony and evidence presented by plaintiff Holdsworth, and noting the inability of the Government to produce any evidence to support its values, I find her values to be credible and the Government's values to be overinflated and not credible. Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Holdsworth for tax bills 1994 through 1998 are the actual values for those tax years. Moreover, I find that Holdsworth has overpaid her property taxes for those years and is entitled to a refund of $1,758.64 plus interest at the statutory rate of 12 percent.

Finally, for tax bills 1999 and later, I will accept Holdworth's proffered value as a good faith estimate of her tax obligation and order the Government to treat this value as the assessed value of 8–30 Estate Peterborg until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Holdsworth has already paid her 1999 tax bill at the Government's assigned values, she is entitled to a credit of $331.39 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without Holdsworth's consent. The Government may, however, chose to refund this credit and interest to her.

2. *8–31 Estate Peterborg*

The following chart demonstrates the assessed values and tax liability for 8–31 Estate Peterborg as well as Holdsworth's own appraised values and proposed tax liability for tax bills 1995 through 2001.

| Tax Year | Assessed Value | Plt.'s Value | Tax Paid | Tax at Plt.'s Value | Overpaid |
|----------|----------------|--------------|----------|---------------------|----------|
| 1995 | $570,930.00 | $450,000 | $4,281.98 | $3,375.00 | $ 906.98 |
| 1996 | $578,408.00 | $450,000 | $4,338.06 | $3,375.00 | $ 963.06 |
| 1997 | $600,450.00 | $450,000 | $4,503.38 | $3,375.00 | $1,128.38 |
| 1998 | $702,288.33 | $450,000 | $5,267.16 | $3,375.00 | $1,892.38 |
|      |             |         |          | Total   | $4,890.58 |
| 1999 | $771,783.00 | $450,000 | $5,788.37 | $3,375.00 | $2,413.37 |
| 2000 | $765,587.00 | $450,000 | $ 0.00 | $3,375.00 | $ 0.00 |
| 2001 | $759,803.00 | $450,000 | $ 0.00 | $3,375.00 | $ 0.00 |
|      |             |         |          | Total   | $2,413.37 |

Having reviewed the testimony and evidence presented by plaintiff Holdsworth, and noting the inability of the Government to produce any evidence to support its

values, I find her values to be credible and the Government's values to be overinflated and not credible.

The only real issue to resolve is what effect, if any, the improvements found by the Tax Assessor's office on its visit to this property on January 16, 2003 has on the value of this property. As noted earlier, before the passage of Act 6415 on June 18, 2001 the Tax Assessor was required by physically view and assess non-commercial property. Thus, I conclude that the Tax Assessor's office physically inspected this property some time between 1999 and 2001 and that these improvements must have occurred some time later. As I am only accepting values provided for these years as good faith estimates and will leave the final determination of value to the Tax Assessor once the Special Master certifies that the Tax Assessor's office is capable of assessing properties as their actual value, any potential injury to the Government is harmless as the Government may seek relief for any underpayment.

Accordingly, per my August 13, 2003 memorandum in the individual case of Equivest St. Thomas, Inc., I will accept and declare that the values provided by Holdsworth for tax bills 1995 through 1998 are the actual values for those tax years. Moreover, I find that Holdsworth has overpaid her property taxes for those years and is entitled to a refund of $4,890.58 plus interest at the statutory rate of 12 percent.

Finally, for tax bills 1999 and later, I will accept Holdworth's proffered value as a good faith estimate of her tax obligation and order the Government to treat this value as the assessed value of 8–31 Estate Peterborg until the Special Master has certified the Territory's assessment system to be capable of assessing properties at their actual value. As Holdsworth has already paid her 1999 tax bill at the Government's assigned value, she is entitled to a credit of $2,413.37 plus interest at the statutory rate of 12 percent. The Government may not apply this credit to any future property tax obligation without Holdsworth's consent. The Government may, however, chose to refund this credit and interest to her.

### DECREE

Having considered the entire record in this matter, including the testimony and documentary evidence presented at the trial on January 28, 2003, and based on the Memorandum of even date, it is hereby,

**DECREED** that the Tax Assessor's Office has failed to assess and tax the litigated properties of plaintiffs at their actual value.

The Court further enters the following remedial orders:

**ORDERED** that Parcel 8–28 Estate Peterborg shall have a value of $395,000.00 and a tax liability of $2,962.50 for its 1992 tax bill, a value of $418,000.00 and a tax liability of $3,135.00 for its 1993 tax bill, a value of $425,000.00 and a tax liability of $3,187.50 for its 1994 tax bill, a value of $325,000.00 and a tax liability of $2,437.50 for its 1995 tax bill, a value of $325,000.00 and a tax liability of $2,437.50 for its 1996 tax bill, a value of $390,000.00 and a tax liability of $2,925.00 for its 1997 tax bill, a value of $440,000.00 and a tax liability of $3,300.00 for its 1998 tax bill, a value of $440,000.00 and a tax liability of $3,300.00 for its 1999 tax bill, a value of $484,000.00 and a tax liability of $3,630.00 for its 2000 tax bill, and a value of $532,400.00 and a tax liability of $3,993.00 for its 2001 tax bill; it is further

**ORDERED** plaintiff Dori P. Derr is entitled to a refund of $651.01 for the overpayment of her 1992 tax bill plus in-

terest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $478.51 for the overpayment of her 1993 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,213.61 for the overpayment of her 1994 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,656.83 for the overpayment of her 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,885.95 for the overpayment of her 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,890.78 for the overpayment of her 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $2,576.65 for the overpayment of her 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $2,976.07 for her overpayment of her 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, a credit of $2,604.73 for her overpayment of her 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $2,509.11 for her overpayment of her 2001 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 100 Estate Lovenlund shall have a value of $40,000.00 and a tax liability of $300.00 for its 1996 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1997 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1998 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1999 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 2000 tax bill, and a value of $40,000.00 and a tax liability of $300.00 for its 2001 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt Development Corporation is entitled to a refund of $165.24 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $211.75 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $211.75 for the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $248.97 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $248.97 for its overpayment of its 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 110 Estate Lovenlund shall have a value of $40,000.00 and a tax liability of $300.00 for its 1994 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1995 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1996 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1997 tax bill, a value of $45,000.00 and a tax liability of $337.50 for its 1998 tax bill, a value of $45,000.00 and a tax liability of $337.50 for its 1999 tax bill and a value of

$55,000.00 and a tax liability of $412.50 for its 2000 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt Development Corporation is entitled to a refund of $114.94 for the overpayment of its 1994 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $114.94 for the overpayment of its 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $114.94 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $177.18 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $118.93 for the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $152.12 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $77.12 for its overpayment of its 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 119 Estate Lovenlund shall have a value of $30,000.00 and a tax liability of $225.00 for its 1995 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1996 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1997 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1998 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1999 tax bill,

and a value of $40,000.00 and a tax liability of $300.00 for its 2000 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt Development Corporation is entitled to a refund of $152.21 for the overpayment of its 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $114.94 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $156.43 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $156.43 for the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $189.62 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $189.62 for its overpayment of its 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 120 Estate Lovenlund shall have a value of $30,000.00 and a tax liability of $225.00 for its 1995 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1996 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1997 tax bill, a value of $45,000.00 and a tax liability of $337.50 for its 1998 tax bill, and a value of $50,000.00 and a tax liability of $375.00 for its 1999 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt Development Corporation is entitled to a refund of $197.93 for the overpayment of its 1995 tax bill plus interest at the statuto-

ry rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $162.24 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $211.75 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $174.25 for the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, and a credit of $173.97 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 11–1–6 Estate Peterborg shall have a value of $35,000.00 and a tax liability of $262.50 for its 1994 tax bill, a value of $35,000.00 and a tax liability of $262.50 for its 1995 tax bill, a value of $35,000.00 and a tax liability of $262.50 for its 1996 tax bill, a value of $37,500.00 and a tax liability of $281.25 for its 1997 tax bill, a value of $40,000.00 and a tax liability of $300.00 for its 1998 tax bill, a value of $42,500.00 and a tax liability of $318.75 for its 1999 tax bill, and a value of $45,500.00 and a tax liability of $341.25 for its 2000 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt Development Corporation is entitled to a refund of $156.61 for the overpayment of its 1994 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $118.51 for the overpayment of its 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30)

days of this Order, a refund of $118.51 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $179.79 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $161.04 for the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $175.82 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $153.32 for its overpayment of its 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 12–19 Estate Peterborg shall have a value of $50,000.00 and a tax liability of $375.00 for its 1996 tax bill, a value of $50,000.00 and a tax liability of $375.00 for its 1997 tax bill, a value of $50,000.00 and a tax liability of $375.00 for its 1998 tax bill, a value of $50,000.00 and a tax liability of $375.00 for its 1999 tax bill, a value of $50,000.00 and a tax liability of $375.00 for its 2000 tax bill, and a value of $50,000.00 and a tax liability of $375.00 for its 2001 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt Development Corporation is entitled to a refund of $313.41 for the overpayment of its 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $382.26 for the overpayment of its 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $382.26 for

the overpayment of its 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $437.33 for its overpayment of its 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment, and a credit of $437.33 for its overpayment of its 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel D–18 Estate Lovenlund shall have a value of $50,000.00 and a tax liability of $375.00 for its 1995 tax bill, a value of $50,000.00 and a tax liability of $375.00 for its 1996 tax bill, a value of $55,000.00 and a tax liability of $412.50 for its 1997 tax bill, a value of $60,000.00 and a tax liability of $450.00 for its 1998 tax bill, and a value of $65,000.00 and a tax liability of $487.50 for its 1999 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt is entitled to a refund of $344.06 for the overpayment of his 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $344.06 for the overpayment of his 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $378.28 for the overpayment of his 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $340.78 for the overpayment of his 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, and a credit of $361.00 for his overpayment of its 1999 tax bill plus interest at the statutory rate of 12

percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 10–2–6 Estate Peterborg shall have a value of $342,000.00 and a tax liability of $2,565.00 for its 1994 tax bill, a value of $342,000.00 and a tax liability of $2,565.00 for its 1995 tax bill, a value of $350,000.00 and a tax liability of $2,625.00 for its 1996 tax bill, a value of $350,000.00 and a tax liability of $2,625.00 for its 1997 tax bill, a value of $350,000.00 and a tax liability of $2,625.00 for its 1998 tax bill, a value of $350,000.00 and a tax liability of $2,625.00 for its 1999 tax bill, and a value of $375,000.00 and a tax liability of $2,812.50 for its 2000 tax bill; it is further

**ORDERED** plaintiff Robert Schmidt is entitled to a refund of $1,030.98 for the overpayment of his 1994 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,030.98 for the overpayment of his 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $958.95 for the overpayment of his 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,339.48 for the overpayment of his 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,339.48 for the overpayment of his 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a credit of $1,705.80 for his overpayment of his 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment,

and a credit of $678.95 for his overpayment of his 2000 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 8–30 Estate Peterborg shall have a value of $80,000.00 and a tax liability of $600.00 for its 1994 tax bill, a value of $80,000.00 and a tax liability of $600.00 for its 1995 tax bill, a value of $80,000.00 and a tax liability of $600.00 for its 1996 tax bill, a value of $80,000.00 and a tax liability of $600.00 for its 1997 tax bill, a value of $80,000.00 and a tax liability of $600.00 for its 1998 tax bill, a value of $80,000.00 and a tax liability of $600.00 for its 1999 tax bill, a value of $80,000.00 and a tax liability of $600.00 for its 2000 tax bill, and a value of $80,000.00 and a tax liability of $600.00 for its 2001 tax bill; it is further

**ORDERED** plaintiff Kim Holdsworth is entitled to a refund of $331.39 for the overpayment of her 1994 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $246.71 for the overpayment of her 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $331.48 for the overpayment of her 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $424.53 for the overpayment of her 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $424.53 for the overpayment of her 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, and a credit of $331.39 for her overpayment of her 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; it is further

**ORDERED** that Parcel 8–31 Estate Peterborg shall have a value of $450,000.00 and a tax liability of $3,375.00 for its 1995 tax bill, a value of $450,000.00 and a tax liability of $3,375.00 for its 1996 tax bill, a value of $450,000.00 and a tax liability of $3,375.00 for its 1997 tax bill, a value of $450,000.00 and a tax liability of $3,375.00 for its 1998 tax bill, a value of $450,000.00 and a tax liability of $3,375.00 for its 1999 tax bill, a value of $450,000.00 and a tax liability of $3,375.00 for its 2000 tax bill, and a value of $450,000.00 and a tax liability of $3,375.00 for its 2001 tax bill; it is further

**ORDERED** plaintiff Kim Holdsworth is entitled to a refund of $906.98 for the overpayment of her 1995 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $963.06 for the overpayment of her 1996 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,128.38 for the overpayment of her 1997 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, a refund of $1,892.16 for the overpayment of her 1998 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment to be refunded within thirty (30) days of this Order, and a credit of $2,413.37 for her overpayment of her 1999 tax bill plus interest at the statutory rate of 12 percent accruing from the date of the payment; and it is further

**ORDERED** that the values and tax liabilities for plaintiffs' respective properties

for their tax bills up to and including 1998 are the actual values and tax liabilities. The values and tax liabilities for plaintiffs' respective properties for their tax bills from 1999 and later shall remain in effect until such time as the Special Master certifies the Territory's property tax system will produce credible and reliable actual values.